IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-904

No. COA21-612

Filed 29 December 2022

Caldwell County, Nos. 11 CRS 050354, 14 CRS 000891

STATE OF NORTH CAROLINA

v.

GLENN SPENCER BOYETTE, Jr., Defendant.

Appeal by Defendant from judgments entered 30 April 2021 by Judge Daniel A. Kuehnert in Caldwell County Superior Court. Heard in the Court of Appeals 10 August 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Kayla D. Britt, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C. Katz, for defendant-appellant.*

MURPHY, Judge.

¶ 1     Rule 4 of the North Carolina Rules of Appellate Procedure authorizes appeal in criminal cases via written notice of appeal filed with the Clerk of Court. Such written notice may be filed at any time between (1) the date of the rendition of the judgment or order and (2) the fourteenth day after entry of the judgment or order. Where a written order exists, the date of entry of the judgment or order is when the judge's written order is filed with the Clerk of Court. Here, the trial court's order was

filed by the Clerk of Court on 24 May 2021.  The next day, on 25 May 2021, Defendant filed his written notice of appeal.  Since Defendant filed his written notice of appeal within the fourteen-day period allowed by Rule 4, Defendant's appeal was timely, and we deny the State's *Motion to Dismiss Appeal*.

¶ 2        Evidence procured in contravention of the Fourth and Fourteenth Amendments is not subject to the exclusionary rule at probation revocation hearings, and we reject Defendant's arguments that the trial court erred by not suppressing evidence allegedly obtained in violation of his constitutional rights.

## **BACKGROUND**

¶ 3         On 16 July 2015, Defendant, pursuant to a plea arrangement, pled guilty to possession of stolen goods and manufacturing methamphetamine.  On 3 September 2015, Defendant received a sentence of 73 to 100 months, suspended for 60 months of supervised probation, for the manufacturing methamphetamine charge.  The same day, the trial court sentenced Defendant to a consecutive term of 6 to 8 months for the possession of stolen goods charge, which was also suspended for 60 months of supervised probation.

¶ 4        Around 1:40 a.m. on 25 May 2020, two Sheriff's deputies, Corporal Robbins and Sergeant Knupp, were at the Yadkin Valley Fire Department on Highway 268 when they saw a yellow Ford pickup truck drive past them toward the Wilkes County Line.  Approximately 10 to 15 minutes later, they saw the truck come back with a

lawnmower in the bed. The officers thought it was unusual for someone to pick up a lawnmower so early in the morning, and they began following the truck in separate patrol cars. They followed Defendant in his truck for about 5 to 8 minutes, and Cpl. Robbins initiated a traffic stop after the truck crossed the middle line and went 55 mph in a 35 mph zone.

¶ 5        After stopping the Defendant at the Hillbilly Trading Post, Cpl. Robbins approached Defendant and retrieved his driver's license. Sgt. Knupp checked Defendant's information because Cpl. Robbins was having difficulty with his radio. While Sgt. Knupp was checking Defendant's information, Cpl. Robbins conducted a "free-air sniff" of the truck with his K-9. The dog completed two circles around the truck; and, although he sniffed "intense[ly]" in a few places, he never alerted. During the free-air sniff, Sgt. Knupp was told by dispatch that Defendant was on probation and had a suspended license, and Sgt. Knupp relayed this information to Cpl. Robbins. Sgt. Knupp also confirmed Defendant's probation status, found Defendant was subject to warrantless searches, and informed Cpl. Robbins of that information. Cpl. Robbins then went back to Defendant and told him he was subject to warrantless searches, which Defendant confirmed.

¶ 6        Cpl. Robbins asked Defendant to exit the vehicle and frisked him for weapons. No weapons were found on Defendant's person. Cpl. Robbins then searched the vehicle while Defendant stood with Sgt. Knupp. In the vehicle, Cpl. Robbins found a

single-shot shotgun, two glass smoking pipes, a straw, and two plastic baggies containing a "crystal substance." The North Carolina State Crime Lab results later revealed the crystal substance was methamphetamine. Neither Sgt. Knupp nor Cpl. Robbins recalled whether Defendant was the registered owner of the truck.[1]

¶ 7 Subsequently, on 17 and 27 May 2020, Defendant's probation officer filed probation violation reports with the trial court, alleging Defendant had violated the revocation-eligible condition of probation not to commit a criminal offense and indicating Defendant was found in possession of a firearm and methamphetamine. The alleged probation violations came before the trial court for hearing on 30 April 2021. At the hearing, the trial court revoked Defendant's probation in both cases and activated his suspended sentences but modified them to run concurrently. Defendant gave written notice of appeal on 25 May 2021; and, on 25 April 2022, the State filed a *Motion to Dismiss Appeal*, arguing Defendant's appeal was untimely.

## ANALYSIS

¶ 8 On appeal, Defendant contends the trial court erred by not suppressing the evidence found during the search of the truck. The State's *Motion to Dismiss Appeal*, however, claims Defendant failed to timely appeal. Accordingly, we first address the

---

[1] At some point during the stop, both officers asked Defendant about the lawnmower and other tools in the back of the pickup. Defendant said they were his, and the officers did not proceed with an investigation.

State's *Motion to Dismiss Appeal* and then whether the trial court erred by not suppressing the evidence found in the search of the truck.

## A. State's *Motion to Dismiss Appeal*

The North Carolina Rules of Appellate Procedure provide:

> Any party entitled by law to appeal from a judgment or order of a [S]uperior or [D]istrict [C]ourt rendered in a criminal action may take appeal by: (1) giving oral notice of appeal at trial, or (2) filing notice of appeal with the [C]lerk of [S]uperior [C]ourt and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment or order . . . .

N.C. R. App. P. 4(a) (2021). According to the relevant portion of N.C.G.S. § 15A-1347, a defendant has the right to appeal "[w]hen a [S]uperior [C]ourt judge, as a result of finding . . . a violation of probation, activates a sentence or imposes special probation." N.C.G.S. § 15A-1347(a) (2021). Also, in a criminal case, a "[j]udgment is entered when [a] sentence is pronounced." N.C.G.S. § 15A-101(4a) (2021). The State argues that, in a probation-revocation case, judgment is entered when the trial court orally announces it is activating a suspended sentence.

"Compliance with the requirements for entry of notice of appeal is jurisdictional." *State v. Oates*, 366 N.C. 264, 266 (2012) (citing *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 197-98 (2008)). "We review issues relating to subject matter jurisdiction de novo." *Id.* (citing *Harris v. Matthews*, 361 N.C. 265, 271 (2007)).

¶ 11 In support of its argument, the State relies on our opinion in *State v. Yonce*. In that case, a defendant was sentenced to 15 to 18 months imprisonment, which the trial court suspended in favor of supervised probation for five years. *State v. Yonce*, 207 N.C. App. 658, 659 (2010), *disc. rev. denied*, 365 N.C. 80 (2011). A little over five months into his probation, the defendant's probation officer filed violation notices. *Id.* On 27 October 2008, a violation hearing was held. *Id.* at 660. The trial court found the defendant had willfully violated the terms and conditions of his probation but gave the defendant until 1 December 2008 to come into compliance and scheduled a review hearing on 8 December 2008. *Id.* The trial court also found that,

> if [the] [d]efendant fully complied with the monetary payment provisions of the original judgments by 1 December 2008, his active [prison] sentences should not be put into effect. On the other hand, if [the] [d]efendant failed to "be in full and complete compliance" on 8 December 2008, his prison sentences should be activated immediately.

*Id.* At the review hearing, the trial court "ordered that [the] [d]efendant begin serving his active sentences." *Id.* at 661. On 12 December 2008, the defendant gave notice of his appeal, which "allude[d] to the 8 December 2008 order," but his arguments on appeal "primarily focused on the 27 October 2008 order." *Id.* at 661-63. After noting that N.C.G.S. § 15A-101 prescribed that judgment is entered when the sentence is pronounced, we reasoned the "[trial court] entered a final judgment when [the judge]

ordered that [the] [d]efendant's 'sentences [be put] into effect' on 27 October 2008."

*Id.* at 663. We then held,

> [s]ince [the] [d]efendant did not note his appeal to this Court until 12 December 2008, a date substantially more than fourteen days following the entry of [the trial court]'s order [on 27 October 2008], this Court lacks jurisdiction over [the] [d]efendant's challenge to the revocation of his probation as embodied in [the trial court]'s order and has no authority to consider [the] [d]efendant's challenge to that decision.

*Id.*

¶ 12     Here, the trial court found Defendant had willfully violated his conditions of probation by being in possession of a firearm and methamphetamine, and it pronounced the activation of Defendant's suspended sentences at the end of the probation violation hearing on 30 April 2021. While it is true N.C.G.S. § 15A-101 purports to dictate that judgment is entered when the sentence is pronounced, in *State v. Oates*, our Supreme Court explained that Rule 4 of the North Carolina Rules of Appellate Procedure governs appeals in criminal cases. *See Oates*, 366 N.C. at 268. The Court continued,

> we believe Rule 4 authorizes two modes of appeal for criminal cases. The Rule permits oral notice of appeal, but only if given at the time of trial . . . . Otherwise, notice of appeal must be in writing and filed with the clerk of court. Such written notice may be filed at any time between the date of the rendition of the judgment or order and the fourteenth day after entry of the judgment or order. Here, the suppression order was rendered on 15 December 2009

> when the trial judge stated, "I'm going to enter the order suppressing," thereby deciding the issue before him. The order was entered on 22 March 2010 when the clerk of the superior court in Sampson County filed the judge's written order in the records of the court. As a result, the span within which the State could have filed its written notice of appeal extended from 15 December 2009 until 5 April 2010. The State's 22 December 2009 appeal was timely.

*Id.* (citations omitted). The State's motion is controlled by *Oates* and not our earlier holding in *Yonce*. The trial court rendered its decision at the hearing on 30 April 2021. The order was entered, however, on 24 May 2021 when the order was filed with the Clerk of Court. Like in *Oates*, where the delayed entry of the order extended the time to appeal, the delayed entry in this case also extended the time Defendant had to appeal. As a result, the filing of Defendant's notice of appeal on 25 May 2021—one day after the entry of the order—was timely. We therefore deny the State's *Motion to Dismiss Appeal.*

## B. Evidence Found in the Search of the Truck

Defendant provides three arguments in support of his contention the evidence found during the search of the truck should have been suppressed by the trial court: (1) the search of the truck by Cpl. Robbins was not supported by reasonable suspicion and therefore violated the Fourth Amendment; (2) the search of the truck was not authorized by N.C.G.S. § 15A-1343(b)(14); and (3) Defendant did not consent to the search of his truck.

¶ 14    However, as each of these arguments incorrectly assumes that the exclusionary rule applies during probation revocation proceedings, they are all without merit.[2]  In 1982, our Supreme Court held "that evidence which does not meet the standards of the [F]ourth and [F]ourteenth [A]mendments to the United States Constitution may be admitted in a probation revocation hearing." *State v. Lombardo*, 306 N.C. 594, 602 (1982).  In addition, N.C.G.S. § 15A-1345 states, in relevant part, "[f]ormal rules of evidence do not apply at the [probation revocation] hearing . . . ." N.C.G.S. § 15A-1345(e) (2021); *see also State v. Murchison*, 367 N.C. 461, 464 (2014) (marks and citations omitted) ("[O]ur Rules of Evidence, other than those concerning privileges, do not apply in proceedings for sentencing, or granting or revoking probation.").    Thus, regardless of whether the search would have passed constitutional muster if offered as the basis for the admission of evidence at a trial on the new offenses, the trial court did not err by admitting the evidence at Defendant's probation revocation hearing.

## CONCLUSION

¶ 15    Our Supreme Court has made it clear that defendants in a criminal proceeding

---

[2] While Defendant's brief only cursorily refers to the Fourth Amendment in the course of these arguments, the caselaw he cites and the underlying rationale of his arguments are necessarily based on the Fourth Amendment exclusionary rule.  Furthermore, Defendant acknowledges in a container paragraph for the section containing all three arguments that he is arguing the search "violated his rights under the United States and North Carolina Constitutions."

may file written notice of appeal within fourteen days of a trial court's order being filed in the records of the court by the Clerk of Court.  Defendant did so, and we deny the State's *Motion to Dismiss Appeal*.  Furthermore, at a probation revocation hearing, the Fourth Amendment's exclusionary rule for evidence does not apply. Accordingly, the trial court did not abuse its discretion by admitting the evidence obtained in the search of the truck.

NO ERROR.

Judge CARPENTER concurs.

Judge JACKSON concurs as to part A and concurs in result only as to part B.